UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KISHNA BROWN,

              Plaintiff,                                     Case No. 12-14953
                                                   Honorable Thomas L. Ludington

v.

BRADLEY LEWIS, NATHANIEL
KAMP, JASON RICHNAK,
DISPATCHER #1, CITY OF BAY CITY,

              Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION TO STRIKE DEFENDANTS' EXPERT**

      Bay City Police Officers Bradley Lewis, Nathaniel Kamp, and Jason Richnak were involved in a felony-traffic stop of Kishna Brown on April 28, 2011, after she was observed driving away from the residence located at 305 Marsac Street in Bay City, Michigan. The Officers stopped Brown because one of the occupants of 305 Marsac—Robert Surgeson—drank too much alcohol and decided to dial 911. His ensuing drunk blathering put the police on alert, and when they saw Brown drive away from the residence, they pulled her over to investigate.

      Brown alleges that during the stop, the Officers swarmed her car with assault rifles aimed at her head, yanked her out of her car, threw her to the ground, and then handcuffed her while kneeling on her back—despite the fact that she was unarmed, with her hands up, attempting to comply. All that, only to find out the mysterious 911 call was simply the result of too much booze.

      So Brown filed a lawsuit against the Officers, along with Dispatcher #1 and the City of Bay City, alleging violations of her Fourth Amendment Rights and Michigan state law. The

Defendants engaged Daniel J. Grant to offer his opinions concerning Brown's claims. On November 16, 2013, Brown filed a motion to strike Mr. Grant as an opinion witness, arguing that his opinions are not admissible under the Federal Rules of Evidence. Brown's motion will be granted.

## I

Mr. Grant boasts extensive experience with police work: he has an Associate Degree in Criminal Justice, and he has served consistently with one of three police departments from 1978 through the present. *See* Grant Curriculum Vitae 1, *attached as* Defs.' Resp. Ex. A. During his thirty-five years of experience, Mr. Grant has worked as a uniformed police officer, a detective, a sergeant, a detective lieutenant, an inspector, deputy chief, and for the past nineteen years, chief of police. *Id.* In addition, since 2004, Mr. Grant has been a part-time instructor of criminal justice at Schoolcraft College, teaching classes offered to both community members and police officers alike. *Id.*

After reviewing some of the evidence in the case, Mr. Grant authored a report in which he offered three opinions: (1) the Officers' response to Surgeson's 911 call "was tactically appropriate and consistent with established Police practice," Grant Report 4, *attached as* Defs.' Resp. Ex. C; (2) the felony stop of Brown's car "was tactically appropriate and consistent with proper law enforcement technique," *id.* at 5; and (3) the use of handcuffs and weapons during the stop "was tactically appropriate and in accordance with the accepted Police practices," *id.* at 6. That report was tendered to Brown and her attorney on July 15, 2013.

Brown was deposed by counsel for Defendants on July 29, 2013. Subsequently, Mr. Grant authored a supplemental report that contains a fourth opinion (as well as the three previously discussed): that "[p]lacing a knee in [Brown's] back while applying handcuffs was

consistent with accepted Police training and practice."  Grant Supp. Report 7, *attached as* Defs.'
Resp. Ex. B.  This supplemental report was tendered to Brown and her attorney on October 4,
2013.

On November 16, 2013, Brown filed a motion to strike Mr. Grant as an expert in this
case.  Brown contends that Mr. Grant's qualifications are "suspect," that he "does not support his
opinions or conclusions," and that "[h]is report essentially restates the self-serving opinions and
conclusions of the three fact witness/Defendants and will not be helpful to the jury."  Pl.'s Mot.
1, ECF No. 28.

## II

Federal Rules of Evidence 702, 703, and 704 govern the admissibility of testimony from
retained experts in federal court.  Rule 702 establishes five threshold requirements for expert
testimony to be admissible: the witness must be "qualified as an expert by knowledge, skill,
experience, training, or education," Fed. R. Evid. 702, and that so-called expert's "scientific,
technical, or other specialized knowledge" must help the trier of fact "to understand the evidence
or to determine a fact in issue," Fed. R. Evid. 702(a).  Moreover, to be admissible, the expert's
testimony must be "based on sufficient facts or data," Fed. R. Evid. 702(b), the testimony must
be the product of "reliable principles and methods," Fed. R. Evid. 702(c), and the expert must
have "reliably applied the principles and methods to the facts of the case," Fed. R. Evid. 702(d).

Rule 703 establishes the types of "facts or data" that an expert can rely upon in forming
opinions: those "that the expert has been made aware of or personally observed."  Fed. R. Evid.
703.  If experts in a particular field would "reasonably rely on those kinds of facts or data in
forming an opinion on the subject," they need not even be admissible for the subsequent opinion
to be admitted.  *Id*.  Finally, Rule 704 addresses opinions "on an ultimate issue."  *See* Fed. R.

Evid. 704.   In general, an opinion is not objectionable "just because it embraces an ultimate issue," unless that issue involves whether a defendant in a criminal case "did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(a), (b).

**III**

Upon review, Mr. Grant's opinions are not "based on sufficient facts or data," and those opinions are improper legal conclusions.  He will not be permitted to testify at trial.

**A**

The problems with Mr. Grant's supplemental expert report begin with the basis for his conclusions; he has not examined all of the evidence in the case.  Instead, Mr. Grant reviewed six Bay City Police Department reports, authored by Bay City employees (including those by the three Defendant Officers).  *See* Grant Supp. Report 1, *attached as* Defs.' Resp. Ex. B.  He also reviewed the dispatch records and the audio recording related to Robert Surgeson's 911 call on April 28, 2011.  *Id*. at 1–2.  And he considered a warrant authorizing request for Robert Surgeson, a felony complaint against Robert Surgeson, and a booking record for Robert Surgeson—without any explanation as to how these three documents are relevant to the issues involved in Brown's traffic stop.  *Id.*

Notably, Mr. Grant did *not* consider Brown's deposition testimony, in which she explains how the Officers treated her.  He did not consider this testimony despite the fact that his supplemental report was authored specifically to respond to Brown's deposition.  *See* Defs.' Resp. 3.

Equally problematic is the fact that Mr. Grant relied on one side—the Defendants' side—of various disputed facts in the case.  He indicates in his report that the 911 operator "advises the

- 4 -

Officers that she can hear a female voice in the background and the female appears 'distraught'." Grant Supp. Report 3.  But that is not what the 911 operator said.  She can be heard in the audio stating that she had "no clue" what Robert Surgeson was up to, that "the female keeps talking but it's not like a fight," and that "*he* sounds very distraught."  911 Audio Recording 3:40–4:04 (emphasis added).  The 911 operator did not say the female was distraught, and neither did anyone else.  Indeed, it appears that Mr. Grant accepted the facts as they were presented in the Officers' reports and came to the conclusion that "Police were advised that there was a 'distraught female' within the residence."  Grant Supp. Report 5.  But based on the audio recording of the 911 call, this is something the police were never told.

In fact, the first five minutes of the 911 audio demonstrate Surgeson telling the people around him not to open the door, and a woman twice responding, "We will," 911 Audio 2:11, 2:13; a woman (maybe even the same woman) in the background audibly laughing, *id.* at 2:26; Surgeson telling someone, "Go upstairs and shut up," and a woman responding, "No," *id.* at 2:53; and finally, a woman telling Surgeson, "You're acting stupid, man," *id.* at 3:35–3:36, and his response, "I know I am," *id.* at 3:37.  All of this information weighs against Mr. Grant's conclusion that "[t]he content of the call provided reason to believe that the caller was engaged in a 'hostage situation' or was attempting to lure Officers to the residence or into an ambush." Grant Supp. Report 4.  Mr. Grant doesn't discuss any of this information in his report; indeed, it appears he did not even consider it.

Moreover, Mr. Grant does not differentiate between what the Officers did when they approached Brown's vehicle, and what they did after they noted no weapons or hostages, could clearly see her hands, and understood that she was complying with their directives.  Rather, Mr. Grant simply indicates that "[t]he felony stop (with weapons drawn), use of handcuffs, search

and temporary detention of [Brown] was tactically appropriate and in accordance with the accepted Police practices[.]"  Grant Supp. Report 6.  It seems that because Mr. Grant believes a "felony stop with weapons drawn was appropriate" at the time Brown's "vehicle was identified," continuing with that felony stop—no matter what the Officers observed as they approached the vehicle—was appropriate.

The fact that Mr. Grant did not address all of the available evidence undermines his conclusions.  He asserts that the "Officers ordered [Brown] to exit the driver's side door while observing her every move" and that "[t]he Officers ordered [Brown] facedown onto the pavement where she was handcuffed and patted down for weapons . . . ."  *Id.* at 7.  Again, these "conclusions" are based *solely* on the Defendant Officers' version of events.  Mr. Grant did not address, let alone credit, Brown's testimony that she was grabbed from the car and "thrown" to the ground.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court established that expert testimony must be "not only relevant, but reliable."  *Id.* at 589.  Because Mr. Grant's supplemental expert report does not address the factual allegations that do not comport with the Officers' version of events, it is not "based on sufficient facts or data," and therefore his conclusions are not reliable; such conclusions are inadmissible.  *See DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 427 (6th Cir. 2006) (ignoring expert report where that report stated "legal conclusions that simply contradict and avoid reference to . . . facts" in the case).

**B**

Even if Mr. Grant's report did consider every piece of evidence in the case—making his opinions potentially admissible—those opinions are nevertheless impermissible legal conclusions.

The Defendants argue that Mr. Grant "will testify regarding the techniques and training provided to Officers and why these techniques are deployed." Defs.' Resp. 6. And, it is true, the Sixth Circuit has allowed a qualified expert to testify "about a discrete aspect of police practices . . . ." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). But Mr. Grant's report makes clear he intends to offer opinion testimony that goes beyond what is permissible— testimony and opinions concerning whether the Officers' actions were actually appropriate. *See* Grant Supp. Report 6–8 (the police had information that "provided probable cause of criminal activity and the need to stop and detain any person leaving the residence"; "[t]he methods employed by the Officers in the felony stop were tactically appropriate"; "[t]he felony stop of the motor vehicle was appropriate"; "Placing a knee in the suspect's back during the handcuffing process is consistent with Police training and practice and would not constitute excessive force.").

And, of course, although Rule 704 provides that testimony is not objectionable simply because it "embraces an ultimate issue," Fed. R. Evid. 704(a), the Sixth Circuit has explained that expert opinions that merely express "legal conclusion[s]" are "properly ignored[.]" *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006). In *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), the Sixth Circuit clarified the critical distinction between permissible opinions that only touch upon an ultimate issue, and those that direct what the jury's conclusion should be:

> When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that *suggest* the answer to the ultimate issue or that give the jury all the information *from which it can draw inferences* as to the ultimate issue. We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.

*Id.* at 1353 (emphasis added). Here, Mr. Grant's opinions do not *suggest* that the Officers' actions were appropriate, or that they used a reasonable amount of force—he impermissibly reaches those very conclusions. This the Federal Rules of Evidence do not permit. *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper"); Fed. R. Evid. 704 advisory committee's note ("These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach").

Further, the Sixth Circuit has expressly precluded experts in cases such as this one from "opin[ing] on what is a reasonable use of force" as "that issue is within the competence of a lay jury." *Hubbard v. Gross*, 199 F. App'x 433, 442 (6th Cir. 2006); *see also id.* at 443 ("Because testimony about whether the officers used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it."). As to Mr. Grant's conclusion that the Officers had "probable cause" to believe criminal activity was occurring based on the radio chatter, "whether or not probable cause existed . . . is an issue of fact for the jury." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (citation omitted). As with his opinions concerning whether the Officers' use of force was appropriate, and whether their seizure of Brown was appropriate, Mr. Grant's conclusions regarding probable cause invade

the province of the jury by explicitly telling members what verdicts to reach.  Such an opinion is

impermissible.  *See Berry*, 25 F.3d at 1353.

## IV

Accordingly, it is **ORDERED** that Brown's motion to strike Defendants' expert, ECF

No. 28, is **GRANTED**.

Dated: January 31, 2014                                    s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing
order was served upon each attorney or party of record
herein by electronic means or first class U.S. mail on
January 31, 2014.
                              s/Tracy A. Jacobs
                              TRACY A. JACOBS

---