UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KISHNA BROWN,

        Plaintiff,                      Case No. 12-14953
                                                        Honorable Thomas L. Ludington

v.

BRADLEY LEWIS, NATHANIEL
KAMP, JASON RICHNAK,
DISPATCHER #1,

        Defendants.
                                             /

**ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION AND
DENYING PLAINTIFF'S EX-PARTE MOTION TO ADJOURN**

      Kishna Brown alleges that on April 28, 2011, three Bay City police officers (Bradley Lewis, Nathaniel Kamp, and Jason Richnak), along with an unnamed dispatcher (collectively, the Defendants), violated her rights. The Defendants acknowledge that on April 28 they conducted a high-risk, felony stop of Brown's vehicle. Brown argues that a felony stop was not warranted, and even if it was, there were justifications for discontinuing the stop once it had begun. Brown also challenged the particular opinions Defendants sought to introduce through expert testimony. The Defendants filed a motion for summary judgment, which the Court denied in part, and Brown filed a motion to strike the Defendants' expert, which the Court granted. On February 14, 2014, the Defendants filed motions to reconsider both decisions. Subsequently, Brown filed an ex-parte motion to adjourn the remaining dates contained in the Court's January 2013 case management and scheduling order. Based on what follows, the motions will be denied.

**I**

On April 28, 2011, at approximately 8:50 p.m., Robert Surgeson (Surgeson) called 911 from his sister's home located at 305 Marsac Street in Bay City, Michigan. At the time, Surgeson was highly intoxicated. Because of the call, during which Surgeson said some alarming things, Bay City Police Officers responded to the 305 Marsac residence.

Meanwhile, Brown and Surgeson's sister, Leslie, returned to the home after visiting a friend. Brown parked in the driveway, helped Leslie carry some things inside, and then drove away. Bay City Police Officers—including Lewis, Kamp, and Richnak—then followed Brown and conducted a felony-traffic stop a short distance from the residence. Their intention was to find out what was going on inside 305 Marsac.

When Brown noticed the Officers' lights, she pulled into a BP gas station. She claims that the Officers then swarmed her car with rifles aimed at her head, pulled her from the car and threw her to the ground, then kneeled on her back and handcuffed her. Brown claims that all the while, the Officers told her to "shut up" despite her repeated questions as to what was going on.

Brown filed a complaint asserting various Fourth Amendment claims as well as state law claims for assault and battery against Lewis, Kamp, Richnak, Dispatcher #1, and Bay City. The Defendants filed a motion for summary judgment arguing that, among other things, Brown's claims were barred by qualified immunity. Brown then filed a motion to strike the Defendants' expert, Police Chief Daniel J. Grant.

The Court denied the motion for summary judgment as to all Defendants save Bay City, as a genuine issue of material fact precluded the application of qualified immunity or judgment as a matter of law. Indeed, the Court concluded that if the traffic stop occurred as Brown suggests, her Fourth Amendment rights were violated. The Court then granted Brown's motion

to strike after determining that Chief Grant's opinions constitute impermissible legal conclusions and are not based on sufficient evidence to be reliable.

The Defendants filed a motion for reconsideration as to both conclusions. They argue that qualified immunity should bar Brown's claims, that Chief Grant's opinions are admissible, and that the contrary holdings should be reversed.

The Defendants filed their motions for reconsideration on February 14, 2014. Nevertheless, their joint final pretrial order and jury instructions were due on February 18, 2014. *See* Jan. 18, 2013 Case Mgmt. & Sched. Order 1, ECF No. 13. The relevant Local Rule provides that if "a timely-filed dispositive motion" is pending "on the seventh day before the date for submitting the final pretrial order," that date will automatically be "postponed and rescheduled to a date no earlier than 7 days after the date of decision on the motion . . . ." E.D. Mich. LR 16.1(f). But, as indicated above, the Defendants' motions were not pending on February 11, 2014 (seven days before the date for submitting the pretrial order). And even if they were, motions for reconsideration do not constitute "dispositive motions" under the Local Rule. *See id*. ("For purposes of this rule, 'dispositive motion' means a motion for judgment on the pleadings, for summary judgment, to certify or decertify a class, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, including such a motion directed to fewer than all claims, issues, or parties.").

Under the case management and scheduling order, "Counsel for plaintiff" has the duty of preparing a draft joint final pretrial order and submitting it to opposing counsel, "after which all counsel will jointly submit the final draft of the proposed joint pretrial order to the Judge's chambers . . . ." Jan. 18, 2013 Case Mgmt. & Sched. Order 5. The parties are also responsible for meeting to confer "prior to trial to discuss jury instructions" and "to (1) reach any possible

stipulations narrowing the issues of law and fact, (2) deal with non-stipulated issues in the manner stated in this paragraph, and (3) exchange documents that will be offered in evidence at the trial." *Id.* Notably, "[i]t shall be the duty of counsel for plaintiff to initiate that meeting and the duty of other counsel *to respond to plaintiff's counsel and to offer their full cooperation and assistance*." *Id.* (emphasis added).

Brown's counsel filed a motion to adjourn the final pretrial conference, alleging that the Defendants' counsel did not supply the input necessary for preparation of the proposed final pretrial order. Indeed, a February 17, 2014 email attached to Brown's motion to adjourn indicates that Brown's counsel sent "rough drafts of the proposed joint final pre-trial order and proposed jury instructions" to Defendants' counsel and communicated that "[t]hey both need more work," requesting "input" so the parties could "finalize." Pl.'s Mot. Adjourn Ex. 1. The Defendants' counsel responded "I filed a motion for reconsideration last week and I am on vacation this week. I will talk to you next Monday." *Id.* As a result, the parties did not submit a joint pretrial order or proposed jury instructions by February 18, 2014.

## II

A motion for reconsideration will be granted if the moving party shows: "(1) a 'palpable defect,' (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733–34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Michalec*, 181 F. Supp. 2d at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 262, 278 (E.D. Mich. 1997)). "Motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." *Michalec*, 181 F. Supp. 2d at 734 (brackets omitted) (quoting E.D. Mich. LR 7.1(h)(3)).

As to Brown's motion to adjourn, "[a] schedule may be modified only for good cause and with the judge's consent." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (quoting Fed. R. Civ. P. 16(b)(4)). A court asked to modify a scheduling order "may do so only if a deadline cannot reasonably be met despite the diligence of the party seeking the extension." *Marcilis*, 693 F.3d at 597 (brackets and citation omitted).

### III

The Defendants request that the Court reconsider its decision to partially deny their motion for summary judgment and its decision to grant Brown's motion to strike their expert. In addition, Brown alleges that the noncompliance of the Defendants' counsel necessitates the adjournment of the final pretrial conference and the current trial date. All three issues are addressed in turn.

### A

The Defendants first take exception to the Court's conclusion that summary judgment was not warranted. They begin by arguing that Brown's unreasonable seizure claim is barred by qualified immunity because "a constitutional prohibition against the display of weapons during a traffic stop" was not "clearly established" by *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006). *See* Defs.' Mot. Recon. Summ. J. 4, ECF No. 47. To be clear, this is not a new argument presented by the Defendants, but simply the reassertion of the arguments that were previously addressed. *See* Defs.' Mot. Summ. J. 19 ("The 'display of weapons' and 'use of handcuffs' to secure [Brown] was appropriate"), ECF No. 18. Accordingly, a motion for reconsideration will not be granted. *See* E.D. Mich. LR 7.1(h)(3).

Moreover, the Defendants' argument remains without merit. In *Smoak*, the Sixth Circuit concluded that the "manner in which th[e] investigatory stop was conducted . . . far exceeded the reasonable suspicion of an objective THP trooper." *Smoak*, 460 F.3d at 782. This was, in large

part, a result of the fact that the officers used guns and handcuffs—which under the circumstances constituted an arrest that was not justified by probable cause. *Id*. at 781–82.

The Court's conclusions here, giving deference to Brown's explanation of the facts (as required on summary judgment) were the same: "the Officers violated Brown's Fourth Amendment rights because the seizure of her person was an arrest without probable cause." Jan. 31, 2014 Op. & Order 20 (citation omitted), ECF No. 44. The use of guns and handcuffs, under the circumstances as explained by Brown, exceeded any reasonable suspicion the Defendant Officers may have had to stop her car in the first instance. Thus, the stop became an arrest, but probable cause justifying the Defendant Officers' belief that Brown had committed a crime was lacking. *Smoak* established beyond argument that an investigatory stop that becomes an arrest—due to the use of guns and handcuffs—absent probable cause is unconstitutional. *See Smoak*, 460 F.3d at 782 ("Caselaw from this circuit has endorsed the use of guns and handcuffs during a felony stop, even if only as a part of an investigatory seizure. Although the use of guns and handcuffs in the present case was unreasonably intrusive, prior decisions had not made this clear.").

The Defendants consistently assert in their motion for reconsideration that this Court concluded the use of handcuffs and guns during an investigatory stop violated Brown's rights. *See* Defs.' Mot. Recon. Summ. J. 5–7. But this is not the case. Indeed, it was the use of guns, knees in Brown's back, and handcuffs that elevated the initial stop into an arrest, and it was this arrest—absent probable cause—that violated Brown's rights. *See* Jan. 31, 2014 Op. & Order 20. Such a constitutional violation is clearly established. Thus, the Defendants are not entitled to qualified immunity on Brown's unreasonable seizure claim.

Neither are the Defendants entitled to qualified immunity on Brown's excessive force claim. Here, the Defendants consistently ignore Brown's assertion that she was "grabbed" by her shirt and shoulders and thrown to the ground. Brown Dep. 155, 157, *attached as* Defs.' Mot. Summ. J. Ex. G. It was not simply the use of handcuffs and a knee in Brown's back that constituted excessive force, but as she explains the events, the manner in which the Defendant Officers flung her through the air. It is well-established that the use of physical force against a suspect who is compliant and poses no danger to herself or others is excessive. *See Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009); *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force . . . on a detainee who . . . is not resisting arrest."). So qualified immunity is not applicable.

Next, the Defendants contend that at least Defendants Kamp and Richnak are entitled to qualified immunity on the excessive force claim: they argue Brown "has provided no evidence" that Defendants "Kamp and Richnak . . . made physical contact or were in a position to prevent physical contact with her." Defs.' Mot. Recon. Summ. J. 10. But Brown testified that she was grabbed from her car and thrown to the ground by two officers; she simply did not know which two. Brown Dep. at 155. As the Court previously concluded, because there is a genuine dispute of material fact as to which officers grabbed and threw Brown (at least according to her version of events), summary judgment is not warranted as to any of them. Jan. 31, 2014 Op. & Order 23; *see also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (per curiam).

Finally, the Defendants are not entitled to governmental immunity on Brown's state law claims. As the Michigan Supreme Court established in *Odom v. Wayne Cnty.*, 760 N.W.2d 217 (Mich. 2008), "to be immune from liability for intentional torts, the governmental employee

must" establish that (1) he was acting during the course of employment; (2) he was acting, or reasonably believed he was acting, within the scope of his authority, and (3) he was acting in good faith. *Id*. at 224. Indeed, the *Odom* court made clear that governmental immunity "protects a governmental employee who reasonably believes that he was authorized to take certain actions, but later learns that he was mistaken." *Id*.

The Defendants argue that they are entitled to immunity because "[a]n Officer exceeds the scope of this authority only where he engaged in an ultra vires activity." Defs.' Mot. Recon. Summ. J. 11. They continue to explain that "[a]n arrest, by definition, falls within the scope of a Police Officer's authority. Therefore, governmental immunity applies." *Id*. The Defendants' argument, summarized of course, is that officers are entitled to governmental immunity for any conduct taken during the course of an arrest because an arrest is not an "ultra vires" activity.

But as established by *Tounes v. Pellerito*, 739 F.3d 885 (6th Cir. 2014), it is proper to deny governmental immunity if a plaintiff asserts claims for excessive force and unreasonable seizure but genuine issues of material fact remain. *See id.* at 890. Because there are disputed facts here—such as whether Brown was thrown by the Defendant Officers after they removed her from her car—the Court cannot determine whether those Defendant Officers acted in good faith, and immunity is not appropriate under the *Ross* test. *See Odom*, 760 N.W.2d at 224.

Because all of the Defendants' claims concerning the motion for summary judgment remain without merit, their motion for reconsideration will be denied.

**B**

The Defendants also filed a motion for reconsideration concerning the Court's conclusion that their expert's opinions constituted legal conclusions and were not based upon sufficient facts or data because he did not consider Brown's version of events (among other notable omissions).

The Defendants argue that "the Court's reasoning in reaching this conclusion constitutes a 'palpable defect' . . . as it misapplied the law with respect to the reliability of expert witnesses." Defs.' Mot. Recon. Expert 2, ECF No. 48. They proceed, however, to suggest that their proposed expert "can only testify to protocol, practices and training provided under *similar circumstances*." *Id*. at 12 (emphasis added).

Such testimony could be permissible from an expert in this case. But those are not the proposed opinions the Defendants' expert, Daniel J. Grant, plans to offer. As indicated in his supplemental expert report, Chief Grant plans to provide four opinions: (1) that the Defendants' response to the 911 call was tactically appropriate; (2) that the felony stop was tactically appropriate; (3) that the use of weapons and handcuffs was tactically appropriate; and (4) placing a knee in Brown's back was consistent with accepted Police training and practice. *See* Grant Supp. Report 4–7, *attached as* Pl.'s Mot. Strike Ex. 2. As the Court previously concluded, all four opinions are impermissible legal conclusions. *See Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) (indicating that proposed expert's opinion—that defendant officers' behavior amounted to negligence—amounted to a "legal conclusion" and was excludable on that basis); *Gorajczyk v. City of St. Clair Shores*, No. 08-14764, 2010 WL 3245432, at *3 (E.D. Mich. Aug. 17, 2010) (excluding expert's conclusory opinion that "the Plaintiff was subjected to excessive use of force").

Importantly, Federal Rule of Civil Procedure 26 requires that an expert's report include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Chief Grant does not indicate in his supplemental report that he plans to offer opinions concerning protocol, practices, and training provided to law enforcement officers generally; he only identifies the four conclusions that the Court has already

considered and determined to be impermissible. Chief Grant may, of course, only testify concerning the opinions included in his report. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (excluding expert's report where it did not comply with Rule 26). Chief Grant cannot testify concerning the opinions in his supplemental report—those are legal conclusions. And pursuant to Rule 26, he cannot testify concerning any opinions that are not in his report. Thus, he was appropriately excluded. The Defendants' motion for reconsideration on this issue will be denied.

C

Brown filed an ex-parte motion to suspend the case management dates, indicating that she sent a proposed final pretrial order and proposed jury instructions to Defendants' counsel on February 17, 2014, and that counsel responded "that he had filed a motion for reconsideration of the trial court's ruling . . . [and] that he was on vacation and would take up the matter on Monday, February 24, 2014." Pl.'s Mot. 1. These claims are borne out by an email chain attached to Brown's motion to adjourn. The emails indicate that Brown's counsel attempted to complete the pretrial disclosures and confer before the February 18 deadline. Counsel for Defendants did not cooperate.

And yet, while Brown has clearly met the good cause standard allowing for an adjournment, *see* Fed. R. Civ. P. 16(b)(4), the Court retains "broad discretion to enforce [its] scheduling orders." *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003). Brown's motion to adjourn will be denied, and the deadlines for submitting the final pretrial order and proposed jury instructions will be rescheduled during the February 25, 2014 final pretrial conference.

**IV**

Accordingly, it is **ORDERED** that the Defendants' motions for reconsideration, ECF Nos. 47 and 48, are **DENIED**.

It is further **ORDERED** that Brown's ex parte motion, ECF No. 49, is **DENIED**.

Dated: February 25, 2014                         s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 25, 2014.

                         s/Tracy A. Jacobs
                         TRACY A. JACOBS

---